UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                               :

UNITED STATES OF AMERICA,                :

                                                 :

                                                 :

                     - against –                 :             13 Cr. 242 (SAS)

                                                     :

JONATHAN MIRABAL,                      :

                         Defendant.                   :

                                                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM ON BEHALF OF JONATHAN MIRABAL
<u>IN CONNECTION WITH DECEMBER 10, 2014 SENTENCING</u>**

**SULLIVAN & WORCESTER LLP**

1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Jonathan Mirabal*

# TABLE OF CONTENTS

OBJECTIONS TO PRESENTENCE REPORT ........................................................... 1

STATEMENT OF FACTS ..................................................................................... 2

I.   HISTORY AND CHARACTERISTICS OF MR. MIRABAL ............................. 2

    A.   Personal Background ....................................................................... 2

    B.   Education And Employment History ................................................ 3

    C.   Mental Health History .................................................................... 3

    D.   Letters of Support .......................................................................... 6

II.  NATURE AND CIRCUMSTANCES OF THE OFFENSE .................................. 8

III. SENTENCING CALCULATIONS AND THE GUIDELINES ........................... 9

ARGUMENT ...................................................................................................... 10

I.   A SENTENCE OF 60 MONTHS IS WARRANTED BECAUSE OF MR.
     MIBABAL'S HISTORY OF SERIOUS MENTAL ILLNESS ........................... 10

II.  A SENTENCE OF 60 MONTHS IS WARRANTED BECAUSE MR. MIRABAL'S
     CRIMINAL HISTORY CATEGORY SUBSTANTIALLY OVERREPRESENTS
     THE SERIOUSNESS OF HIS CRIMINAL HISTORY ...................................... 12

III. A SENTENCE OF 60 MONTHS IS SUFFICIENT, BUT NOT GREATER THAN
     NECESSARY, TO COMPLY WITH THE PURPOSES OF SENTENCING UNDER
     18 U.S.C. § 3553(a) .................................................................................. 13

IV.  THE COURT SHOULD FURTHER REDUCE MR. MIRABAL'S SENTENCE BY
     17 MONTHS, PURSUANT TO SECTION 5G1.3(b) OF THE GUIDELINES AND
     AS AGREED TO BY THE PARTIES IN THE PLEA AGREEMENT .................. 15

CONCLUSION ................................................................................................... 17

APPENDIX ....................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

Cases                                                                        Page

*United States v. Brown*,
   985 F.2d 478 (9th Cir. 1993) ............................................................................. 12-13

*United States v. DeJesus*,
   75 F. Supp. 2d 141 (S.D.N.Y. 1999)..........................................................................12

*United States v. Hammond*,
   240 F. Supp. 2d 872 (E.D. Wis. 2003).....................................................................12

*United States v. Mapp*,
   No. 05-80494, 2007 WL 485513 (E.D. Mich. Feb. 9, 2007)....................................13

*United States v. Rivers*,
   50 F.3d 1126 (2d Cir. 1995)......................................................................................12

*United States v. Rivers*,
   329 F.3d 119 (2d Cir. 2003)......................................................................................16

*United States v. Shoupe*,
   988 F.2d 440 (3d Cir. 1993)......................................................................................12

Statutes

18 U.S.C. § 3553(a) ...................................................................................10, 11, 13, 14

Sentencing Guidelines

U.S.S.G. § 1B1.11(a) ........................................................................................................1

U.S.S.G. § 2D1.1(c) ....................................................................................................1, 10

U.S.S.G. § 5G1.3(b)....................................................................................................15, 16

<u>**OBJECTIONS TO PRESENTENCE REPORT**</u>

Jonathan Mirabal seeks the Court's consideration of two substantive objections to the Presentence Investigation Report, dated as modified as of October 30, 2014 (the "Report"), each of which previously was raised with the Probation Office.

First, Mr. Mirabal objects to paragraphs 9 through and including 27 and paragraphs 29 through and including 34 of the Report to the extent that these paragraphs (a) recite facts outside of those set forth by Mr. Mirabal during his guilty plea allocution on June 9, 2014; (b) concern conduct involving other individuals of which Mr. Mirabal is unaware and lacks personal knowledge; and (c) rely on and/or are supported by information and materials relating to his co-defendants that have not been made available to Mr. Mirabal.

Second, in connection with paragraphs 37, 38, 43, 47 and 129 of the Report, and all other paragraphs in the Report that reference and/or rely upon the application of the United States Sentencing Commission Guidelines Manual in effect as of November 1, 2013, the Court is required to use the United States Sentencing Guidelines (the "Guidelines") that are in effect on the date when Mr. Mirabal is sentenced. *See* U.S.S.G. § 1B1.11(a). Here, the Probation Office continued to apply the November 1, 2013 version of the Guidelines, but expressly noted that the November 1, 2014 Guidelines would be in effect at the time of Mr. Mirabal's sentencing. *See* Report ¶¶ 37, 38, 113, 129.

Under the Guidelines effective as of November 1, 2014, Mr. Mirabal's base offense level has been reduced by two points from level 26 to a level 24. Of note, and pursuant to the then current policy of the Department of Justice, the government already has agreed to a two-level downward variance from the offense level set forth in Section 2D1.1(c) of the November 1, 2013

version of the Guidelines.  *See* Plea Agreement, dated June 3, 2014 (the "Agreement"), at 4; *see also* Report ¶¶ 7(h), 129.

## STATEMENT OF FACTS

### I.  HISTORY AND CHARACTERISTICS OF MR. MIRABAL

#### A.  Personal Background

Mr. Mirabal, who is now 22 years old, was born in New York City on February 28, 1992 to Martha Morillo and an unnamed father.  Report ¶ 72.  His parents were never married.  *Id.* ¶ 73.  Mr. Mirabal knows nothing about his father, a fact that has bothered him his whole life.  *See id*. ¶¶ 72-73.  Mr. Mirabal's mother is 43 years old and lives in the Bronx.  *Id.* ¶ 72.  She emigrated from the Dominican Republic, where some of Mr. Mirabal's family still resides.  Ex. A. at 2-3.[1]  Ms. Morillo previously worked for the Department of Education, but she is currently employed as a babysitter.  Report ¶ 72.  Mr. Mirabal has two brothers and one sister: an older brother, Luis (age 27); a sister, Leticia (age 16); and a brother, Yandel (age 2)*. Id.* ¶ 72.

Mr. Mirabal grew up living with his mother and his siblings on the Upper West Side of Manhattan.  *Id.* ¶ 74.  His mother received public assistance to help care for the family.  *Id.*  Ms. Morillo believes that Mr. Mirabal had a difficult childhood due to his father's absence and that this absence contributed to him making bad decisions as a teenager.  *See* Ex. E.

In 2008, when Mr. Mirabal was 16 years old, he got into a fight with his brother Luis, who was then 21 years old.  Report ¶ 75.  Luis threw a glass candle holder at Mr. Mirabal, and Mr. Mirabal impulsively stabbed Luis.  *Id.* ¶ 75.  Mr. Mirabal is full of "regret, shame and sorrow" because of his conduct.  Ex. B.  Mr. Mirabal was convicted of assault and adjudicated as a youthful offender.  Report ¶ 75.

---

[1]  All referenced exhibits are attached hereto.

While in custody, Mr. Mirabal was prescribed medication and mandated to work with a psychologist. *Id.* As set forth below, Mr. Mirabal still struggles today to understand what caused him to hurt his brother and is "still traumatized" by the event. Ex. B.

### B. Education And Employment History

Mr. Mirabal attended public schools in New York City until the middle of ninth grade, with the exception of about a year in seventh grade when he attended school in the Dominican Republic. Report ¶¶ 97-99. He obtained his GED in December 2012. *Id.* ¶ 100. While in custody, Mr. Mirabal has "accomplished a lot." Ex. B. He completed multiple educational programs and attended various self-help workshops. *See id.* He also obtained training in numerous areas, including job skills, child support and tutoring English as a Second Language. *See* Ex. Q (Mr. Mirabal's certificates).

Prior to his incarceration, Mr. Mirabal held jobs at a construction company and as a cashier at an Au Bon Pain in Manhattan. Report ¶ 105. During the summer of 2007, he worked as a youth counselor with the Summer Youth Employment Program and also at a home for the elderly. *Id.* ¶ 106. While incarcerated at the MCC, Mr. Mirabal has worked as an orderly, and his supervisor praised him for his attitude and ability to work well with others. *Id.* ¶ 103.

Mr. Mirabal continues to search for a "budget friendly college," *see* Ex. B, and has secured an offer of employment following his release from prison. *See* Ex. P.

### C. Mental Health History

As the Probation Office acknowledges in the Report, Mr. Mirabal has suffered from a long history of mental illness which "may have contributed to some of his prior criminal history." Report at 30. This history of mental illness includes diagnoses of several serious psychological disorders, including paranoid schizophrenia, psychosis and bipolar disorder, which have resulted in periods of Mr. Mirabal's hospitalization and residential treatment for psychiatric

care as well as his receipt of psychotherapy and psychopharmacological treatment. *See id.* ¶¶ 89-91 (summarizing medical records).

Undersigned counsel retained Dr. Sanford L. Drob, a clinical and forensic psychologist, to conduct a forensic psychological examination of Mr. Mirabal and to review Mr. Mirabal's mental health history records. Dr. Drob prepared a comprehensive report, providing a detailed description of Mr. Mirabal's psychiatric history and offering his own prognosis and clinical assessment of Mr. Mirabal's condition. *See* Ex. A.

For example, Dr. Drob offers the following summary of his conclusions regarding Mr. Mirabal's condition:



*Id.* at 15.

Dr. Drob then states his opinion about ███████████████████████████████ ████████████████████████████:



*Id.* at 15-16.  Of particular note, Dr. Drob states that ███████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████ (*id.* at 16):



*Id.*

Dr. Drob concludes, however, that ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████:

*Id.* at 2.  Second, Dr. Drob notes that Mr. Mirabal ████████████████████████████

███████████████████████████████████ *Id.*  Specifically, Dr. Drob

recommends  that  ████████████████████████████████████████████████████████████

██████████████████████████████████████:



*Id.* at 18.

### D.     Letters of Support

Mr. Mirabal maintains a close relationship with his family, as reflected by the content and sentiment expressed in the many letters submitted on his behalf.  He is close to his mother and stepfather, grandfather, siblings and cousins, all of whom emphasize his dedication to his family and urge the Court to give him a second chance.  *See* Report ¶ 79.  Indeed, the letters from Mr. Mirabal's family and members of his community make clear that Mr. Mirabal will be fortunate to rely upon a strong system of support when he is released from prison.  *See* Exs. D-P.

Mr. Mirabal's son, Jonathan, is five years old.  Report ¶ 81.  Jonathan lives with his mother, Alondra Castro.  *See id.*  Before he was incarcerated, Mr. Mirabal did not live with his son, but he saw Jonathan at least once a week and "always pushed for more."  *Id.* (internal quotation marks omitted).  Mr. Mirabal also has maintained a good relationship with Ms. Castro, who has submitted a letter to the Court on his behalf.  *See* Ex. G.  Ms. Castro writes in her letter that she believes Mr. Mirabal is a good person who wants to become a better father, and she asks the Court to give him a second chance to build his relationship with his son:

> I know everyone is not perfect we all go thru a lot and sometimes
> we don't manage the right way. . . . As of right now I'm trying to
> give him a second chance to be in his kid['s] life. He is not a bad
> person at all and [I] just wish he can be out to have a relationship
> with his boy[]. Everyone does deserve a second chance and it
> would be a [pleasure] and a happiness to know that he was granted
> [] another opportunity to do things the right way. I hope you can
> touch your heart and see that he has a motivation to do better and
> become a better self [ ] and a better father.

*Id.*

Mr. Mirabal also serves as a father figure to the daughter of his fiancée, Gabrielle Velez.

Ms. Velez writes in her letter to the Court that Mr. Mirabal is a compassionate person who takes

care of his family and is trying to make amends:

> Jonathan . . . has been working to make amends for his infractions
> which is evident by [his] receiving services while incarcerated,
> also occupying his time with a job, trying to do something
> productive with his time. He is currently in counseling trying to
> become a better person. Jonathan . . . is a family man. He takes
> care of his younger sister and he is a father figure to my daughter.

Ex. F.

Mr. Mirabal's mother, Martha Morillo, is very close to her son; she has visited him

almost weekly at the MCC and speaks with him by phone on a regular basis. Ms. Morillo

acknowledges in her letter to the Court that her son has made "bad decisions in the past," but she

urges the Court to return him to his family and to give him a chance to rebuild his life. Ex. E.

Mr. Mirabal's stepfather, Pedro Ortiz, shares his wife's feelings about his "friend and stepson"

and asks the Court to "[p]lease allow [Mr. Mirabal] to come out soon to be back with his family

again." Ex. J.

Like Ms. Morillo and Mr. Ortiz, other members of the family have written how much

they have missed Mr. Mirabal during his incarceration. Mr. Mirabal's younger sister, Leticia

Morillo, describes Mr. Mirabal as "my better half [and] the only male who has been there for

me" and asks the Court to return him to his family and especially to his grandfather. Ex. H. Mr. Mirabal's 84-year-old grandfather, Ramon Morillo, writes that he misses Mr. Mirabal and is "very sorry to see him in jail for so long," asking the Court to "[p]lease give him a chance to return to his family and to share with me the little life I have left." Ex. I.

Mr. Mirabal's cousin, Joseline Morillo, writes in her letter about "how much Jonathan Mirabal . . . is missed, not only as a cousin to me but as a brother. He is also missed by many others. There is no reality without him, he is such a wonderful person with a great soul and with a good head on his shoulders." Ex. M. Expressing a sentiment echoed by others, Joseline ends her letter by asking the Court to send Mr. Mirabal home to his family "because we need him." *Id.*

Finally, Mr. Mirabal's brother, Luis, writes that he has forgiven his brother for the stabbing incident that happened when Mr. Mirabal was only 16 years old; that he believes it "is time to move on and put this behind us;" and that he and Mr. Mirabal "get along better than ever now." Ex. D.

## II.   NATURE AND CIRCUMSTANCES OF THE OFFENSE

On June 9, 2014, Mr. Mirabal pled guilty to engaging in the following conduct:

> I agreed with other people to distribute and possess with intent to distribute heroin in the Bronx. I did this for several weeks in late 2011 and beginning in 2012.

Transcript from Plea, dated June 9, 2014, at 17:6-9, ECF No. 268. As set forth in his allocution, Mr. Mirabal's involvement was rather limited in time and scope.

Mr. Mirabal was not an organizer, leader, manager or supervisor. In connection with the conspiracy, he never engaged in any violence, and he never possessed or used a gun. Moreover, Mr. Mirabal has never minimized or downplayed his role. Following his review of the draft Report, Mr. Mirabal asked his counsel to inform the Probation Office: "I accept full

responsibility for my actions and that I am sorry." Ex. C; *see also* Report ¶ 36. Indeed, the Probation Office notes that Mr. Mirabal "has clearly demonstrated acceptance of responsibility for the offense." Report ¶ 45.

In addition, Mr. Mirabal has written to this Court and reiterated: "I take full responsibility for my actions and I am deeply sorry for all the laws that I have broken. I've never been away from my family, as long as I have been away as of now. I never again want to be away from my loved ones. I've really had the chance to get to know myself. Please consider being lenient with me." Ex. B.

## III. SENTENCING CALCULATIONS AND THE GUIDELINES

In an earlier draft of the Report and its attached Memorandum, dated October 9, 2014, the Probation Office found that Mr. Mirabal had a Total Offense Level of 31, a Criminal History Category of VI and a Guidelines range of 188 to 235 months. *See* Presentence Investigation Report, dated as modified as of October 9, 2014, at 28-29. The Probation Office found this suggested range to be "extreme for an individual who . . . sold between 100 and 400 grams of heroin" and "acknowledge[d] that Mr. Mirabal's mental illness may have contributed to some of his prior criminal history." *Id.* As a result, the Probation Office recommended a variance -- a sentence of 84 months. *See id.*

In the Report and its attached Memorandum, dated October 30, 2014, the Probation Office corrected its error and found that Mr. Mirabal is not a Career Offender. *See* Report at 28. The Probation Office further found that Mr. Mirabal had a Total Offense Level of 23, a Criminal History Category of V (with 10 criminal history points) and a Guidelines range of 84 to 105 months. *See id.* ¶¶ 47, 66, 113. The Probation Office again recommended a sentence of 84 months. *See id.* at 29-30. Nevertheless, the Probation Office further noted that the Total Offense Level would be reduced to 21, with a corresponding Guidelines range of 70 to 87 months

imprisonment based upon the proposed amendment expected to take effect on November 1, 2014. *See id.* ¶ 129.

In the Agreement, the parties agreed that Mr. Mirabal had a Total Offense Level of 23, a Criminal History Category of III (with 5 criminal history points) and a Guidelines range of 57 to 71 months. *See* Agreement at 2-4; *see also* Report ¶ 7(d)-7(f). The parties also agreed that (i) pursuant to current policy of the Department of Justice, a two-level downward variance is warranted from the offense level set forth in Section 2D1.1(c) of the November 1, 2013 version of the Guidelines and (ii) Mr. Mirabal should be sentenced as though the applicable Guidelines range is 46 to 57 months' imprisonment. *See* Agreement at 4; *see also* Report ¶ 7(h).

For the reasons set forth below, Mr. Mirabal respectfully requests a sentence of 60 months based upon the factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).

## ARGUMENT

**I.    A SENTENCE OF 60 MONTHS IS WARRANTED BECAUSE OF MR. MIRABAL'S HISTORY OF SERIOUS MENTAL ILLNESS**

The Report, which is confirmed by Dr. Drob's independent analysis, finds that Mr. Mirabal's mental illness likely contributed to the commission of certain prior offenses. *See* Report at 30.

Here, it is significant that nearly all of Mr. Mirabal's prior offenses were committed when he was just a teenager. Dr. Drob's report describes ███████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████:

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████



Ex. A at 17. Elsewhere in the report, Dr. Drob similarly explains that ████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████ *Id.*

In fact, Dr. Drob expressly concludes that ████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████:

*Id.*

For these reasons, Mr. Mirabal requests that the Court consider his history of significant

mental conditions, as outlined in the Report and by Dr. Drob (*see* Ex. A), as a sentencing factor

under 18 U.S.C. § 3553(a) and conclude that a sentence of 60 months would be appropriate in

light of this longstanding and serious history.

## II. A SENTENCE OF 60 MONTHS IS WARRANTED BECAUSE MR. MIRABAL'S CRIMINAL HISTORY CATEGORY SUBSTANTIALLY OVERREPRESENTS THE SERIOUSNESS OF HIS CRIMINAL HISTORY

It is well settled that "a sentencing judge should exercise discretion whenever the judge concludes that the consequences of the mathematical prior-history calculation . . . either underrepresent or overrepresent the seriousness of a defendant's prior record." *United States v. Rivers*, 50 F.3d 1126, 1131 (2d Cir. 1995). Here, the inclusion of Mr. Mirabal's two youthful offender adjudications in the calculation of his Criminal History Category results in a significant overstatement of both Mr. Mirabal's criminal history.

As this Court has found, it is appropriate for the sentencing court to consider an individual's age at the time when he committed prior criminal offenses. *See, e.g.*, *United States v. DeJesus*, 75 F. Supp. 2d 141, 144 (S.D.N.Y. 1999) (Scheindlin, J.) (finding that a lower Criminal History Category more appropriately represented the seriousness of defendant's criminal history because, in part, "[m]ost of [defendant's] criminal conduct was committed before he was 21 years old" and "[a] lengthy sentence required by a higher criminal history category will lessen, not increase, the likelihood of rehabilitation"). Here, Mr. Mirabal has been assessed 5 of his 10 criminal history points for conduct at age 16, and a total of 9 of his 10 criminal history points relates to conduct prior to Mr. Mirabal turning 20 years old. *See* Report ¶¶ 50, 52, 57, 59.

Indeed, as another court has explained: "[i]f the defendant committed the prior offenses when young and immature he could be seen as less dangerous than one who, well into adulthood, decided to break the law." *United States v. Hammond*, 240 F. Supp. 2d 872, 878 (E.D. Wis. 2003); *see also United States v. Shoupe*, 988 F.2d 440, 447 (3d Cir. 1993) (defendant's age and immaturity at time of priors were relevant factors); *United States v. Brown*, 985 F.2d 478, 482

(9th Cir. 1993) (defendant's age at time he committed prior offenses may be relevant when it causes criminal history category score significantly to overstate seriousness of criminal record); *United States v. Mapp*, No. 05-80494, 2007 WL 485513, at *3 (E.D. Mich. Feb. 9, 2007) (finding defendant's criminal history category overstated seriousness of criminal history because, *inter alia*, his past convictions occurred when he was in late teens).

That is certainly the case here, as Dr. Drob explains in his report:



Ex. A at 18. As such, the Court should find that (i) Mr. Mirabal's Criminal History Category overrepresents the seriousness of his criminal history because Mr. Mirabal was only 16 years old when he received the two youthful offender adjudications that account for half of Mr. Mirabal's criminal history points and (ii) a sentence of 60 months is warranted.

## III. A SENTENCE OF 60 MONTHS IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO COMPLY WITH THE PURPOSES OF SENTENCING UNDER 18 U.S.C. § 3553(a)

The overriding principle and basic mandate of 18 U.S.C. § 3553(a) requires this Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2): retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); deterrence; incapacitation ("to protect the public from further crimes of the defendant"); and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). 18 U.S.C. § 3553(a).

Specifically, a sentencing court must consider several factors listed in Section 3553(a). These factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to carry out the four principles outlined above; (3) the kinds of sentences available; (4) the kinds of sentences and Guidelines range; (5) any pertinent policy statement by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution. *See* 18 U.S.C. § 3553(a)(1)-(7).

With respect to the consideration of the first five of these factors, Mr. Mirabal respectfully refers the Court to the detailed information set forth in the Statement of Facts, *supra*. As for the sixth factor, Mr. Mirabal notes that this Court has already sentenced several defendants under the instant indictment. In particular, this Court is respectfully asked to consider the sentences imposed upon co-defendants Grooms, Cunningham and Aviles which amount to 60 months, 63 months and 60 months, respectively. *See* ECF Nos. 406, 420 and 450. Like Mr. Mirabal, Messrs. Grooms, Cunningham and Aviles were convicted of violating Section 841(b)(1)(B). *See* Report ¶ 9; ECF No. 446 at 2. Yet, unlike Mr. Mirabal, Messrs. Grooms and Cunningham also were charged with possessing a firearm in connection with the offense charged in the indictment, *see* Report ¶ 34, and Mr. Aviles was found to be a Career Offender, *see* ECF No. 446.

Significantly, Mr. Aviles' sentence of 60 months was well below the bottom end of his Guidelines range. *See* ECF No. 446 at 2 (stating government's position that the stipulated Guidelines range of 151 to 188 months should apply). Likewise, Mr. Cunningham's sentence of 63 months was well below the bottom end of his Guidelines range of 70 to 87 months. *See* ECF

No. 415 at 2.  Simply put, a sentence of 60 months for Mr. Mirabal in this case therefore would be in line with the sentences received by his co-defendants.[2]

In addition, given that Mr. Mirabal has never received a sentence of more than 48 months at one time, *see* Report ¶ 57, a sentence of 60 months would serve as a significant punishment while at the same time taking into account Mr. Mirabal's need for rehabilitation and ongoing psychotherapy as recommended by Dr. Drob.  *See* Exs. A & B.  Mr. Mirabal remains a young man who still has the ability to turn his life into a productive one -- and all the more so if he has access to the appropriate psychological treatment.  *See* Ex. A.  A sentence of 60 months also would take into account the gravity of Mr. Mirabal's conduct and would amount to the most serious sentence that Mr. Mirabal has ever received.  In sum, such a sentence would more than adequately serve the needs outlined in 18 U.S.C. § 3553(a).

## IV.    THE COURT SHOULD REDUCE MR. MIRABAL'S SENTENCE BY 17 MONTHS PURSUANT TO SECTION 5G1.3(b) OF THE GUIDELINES AND AS AGREED TO BY THE PARTIES IN THE PLEA AGREEMENT

As a final consideration, Mr. Mirabal respectfully requests that the Court adjust his sentence pursuant to Section 5G1.3(b) of the Guidelines by deducting 17 months that Mr. Mirabal has already served in connection with his January 9, 2013 state court conviction.

Section 5G1.3(b) provides, in relevant part:

> [where] a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:
>
> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of

---

[2] The seventh factor is not relevant to this case.

> imprisonment will not be credited to the federal sentence by the
> Bureau of Prisons; and
>
> (2) the sentence for the instant offense shall be imposed to run
> concurrently to the remainder of the discharged term of
> imprisonment.

U.S.S.G. § 5G1.3(b).

The Second Circuit has held that it is appropriate for a sentencing court to consider and grant a defendant's request for a Section 5G1.3(b) adjustment. *See, e.g.*, *United States v. Rivers*, 329 F.3d 119, 121 (2d Cir. 2003) (lower court imposed 64-month sentence and properly adjusted the sentence under U.S.S.G. § 5G1.3(b) "by deducting the 18 months [defendant] had served in state prison -- leaving [defendant] with a total of 46 months remaining to complete his sentence").

Here, the Government agreed in the Agreement that Mr. Mirabal is entitled to seek, pursuant to U.S.S.G. § 5G1.3(b), an adjustment for:

> time already served on the sentence from that conviction for any
> period of imprisonment related to the defendant's January 9, 2013
> conviction, as described in Section B, subparagraph 2, including
> the period of the defendant's pre-trial detention (for such
> conviction) from March 9, 2012 through January 9, 2013 and the
> period following the defendant's conviction through the date of the
> defendant's transfer to federal custody -- from January 10, 2013
> through August 16, 2013 -- that will not be credited to the federal
> sentence by the Bureau of Prisons.

Agreement at 4; *see* Report ¶ 7(g). Accordingly, Mr. Mirabal respectfully requests that the Court adjust his sentence by deducting 17 months.

## CONCLUSION

For the foregoing reasons, Mr. Mirabal respectfully requests that the Court impose a sentence of 60 months, to be further adjusted by deducting 17 months that Mr. Mirabal has served in state prison, leaving Mr. Mirabal with a total of 43 months remaining to complete his sentence.

Dated:  New York, New York
   December 4, 2014

**SULLIVAN & WORCESTER LLP**

By: _____
   Harry H. Rimm
   Clark A. Freeman

1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Jonathan Mirabal*

**APPENDIX**

Exhibit A:     Forensic Psychological Evaluation by Dr. Sanford L. Drob, Ph.D.

Exhibit B:     Letter from Jonathan Mirabal to Judge Shira A. Scheindlin

Exhibit C:     Letter from Jonathan Mirabal to Harry H. Rimm

Exhibit D:     Letter from Luis Morillo (Mr. Mirabal's brother)

Exhibit E:     Letter from Martha Morillo (Mr. Mirabal's mother)

Exhibit F:     Letter from Gabrielle Velez (Mr. Mirabal's fiancée)

Exhibit G:     Letter from Alondra Castro (the mother of Mr. Mirabal's son)

Exhibit H:     Letter from Leticia Morillo (Mr. Mirabal's sister)

Exhibit I:     Letter from Ramon Morillo (Mr. Mirabal's grandfather)

Exhibit J:     Letter from Pedro Ortiz (Mr. Mirabal's stepfather)

Exhibit K:     Letter from Narcissa Morillo (Mr. Mirabal's aunt)

Exhibit L:     Letter from Joseline Morillo (Mr. Mirabal's aunt)

Exhibit M:     Letter from Joseline Morillo (Mr. Mirabal's cousin)

Exhibit N:     Letter from Sabrina Vera (Mr. Mirabal's cousin)

Exhibit O:     Letter from Sophia Abinacer (Mr. Mirabal's friend)

Exhibit P:     Letter from Andres Food Corp.

Exhibit Q:     Copies of certificates obtained during incarceration:
                  Child Support Information Session
                  New York Reentry Education Network Workshop
                  Osborne Association Workshop
                  Non-Residential Drug Treatment Program
                  Tutoring English as a Second Language
                  Work Performance Rating from the Federal Bureau of Prisons
                  High School Equivalency Diploma